UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

CITIZENS NATIONAL BANK and )
CNB BANKSHARES, INC. )
  )
      Plaintiffs, )
  )
v. )     No.:   3:20-CV-555-TAV-HBG
  )
VOLUNTEER BANCORP, INC. and )
CIVIS BANK, )
  )
      Defendants. )

## MEMORANDUM OPINION

      This civil matter is before the Court on Defendants' Motion to Dismiss the Second Amended Complaint [Doc. 18]. Defendants seek dismissal under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. §§ 78u-4 *et seq.*, and 28 U.S.C. § 1367(c) [*Id.* p. 1]. Plaintiffs responded in opposition [Doc. 22], and defendants replied [Doc. 23]. The matter is now ripe for resolution. For the reasons that follow, the motion to dismiss [Doc. 18] will be **GRANTED**.

## I.    Factual Background

      Plaintiffs bring this action, asserting that defendants fraudulently made material misrepresentations and omissions in relation to the sale or purchase of securities in violation of Section 10(b) of the Securities Exchange Act and Rule 10b-5, promulgated thereunder [Doc. 17 p. 8]. The parties began conversations to arrange a purchase of Defendant Civis Bank ("Civis") in January 2019 [*Id.* ¶ 7]. In May 2019, the parties first

entered into an Indication of Interest Agreement, and the agreement was extended several times [*Id.* ¶¶ 8, 12]. In March 2020, defendants executed an Letter of Intent, which was also extended, stating that plaintiffs would acquire Civis from defendant Volunteer in either a stock purchase or asset purchase transaction, and Civis would thereafter merge into Citizens National Bank [*Id.* ¶¶ 15, 17, 20]. The Letter of Intent and subsequent extensions had an exclusivity provision that defendants would not negotiate or discuss a sale with other persons, and if discussion regarding a purchase occurred, defendants were to notify plaintiffs [*Id.* ¶ 18]. This provision was extended through November 30, 2020 [*Id.* ¶ 23]. The parties continued discussions and preparations, and on December 18, 2020, plaintiffs provided their signature page for the Stock Purchase Agreement [*Id.* ¶ 26]. Plaintiffs learned defendants had entered into a letter of intent with another interested entity and would not be entering into the Agreement with plaintiffs [*Id.* ¶ 28]. Plaintiffs allege defendants concealed a scheme to defraud plaintiffs related to the transaction [*Id.* ¶ 32] and bring suit alleging violations of Section 10(b) of the 1934 Securities Act and Rule 10b-5 promulgated thereunder, in addition to asserting a variety of state law claims, including breach of contract, fraud, intentional misrepresentation, unjust enrichment, and the Tennessee Securities Act [*Id.* pp. 8–12].

## II. Standard of Review

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Federal Rule of Civil Procedure 8(a) sets out a liberal pleading standard. *Smith v. City of Salem*, 378 F.3d 566, 576 n.1 (6th Cir. 2004). Thus, pleadings in federal court need only

contain "'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the [opposing party] fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Detailed factual allegations are not required, but a party's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions." *Id.* (alterations in original). "[A] formulaic recitation of the elements of a cause of action will not do," nor will "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555, 557).

In deciding a Rule 12(b)(6) motion, the court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *accord Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007). This assumption of factual veracity, however, does not extend to bare assertions of legal conclusions, *Iqbal*, 556 U.S. at 679, nor is the Court "bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is ultimately "a context-specific task that requires [the Court] to draw on its judicial experience and common sense." *Id.* at 679. In conducting this inquiry, the Court "must construe the complaint in a light most favorable to plaintiff[], accept all well-pled

3

factual allegations as true, and determine whether plaintiff[] undoubtedly can prove no set of facts in support of those allegations that would entitle [her] to relief." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citing *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005)).

## III. Analysis

Section 10(b) of the Securities Exchange Act and Rule 10b-5, promulgated thereunder, "prohibit fraudulent, material misstatements in connection with the sale or purchase of a security." *Ind. State Dist. Council of Laborers and Hod Carriers Pension & Welfare Fund v. Omnicare, Inc.*, 583 F.3d 935, 942 (6th Cir. 2009). To succeed on a private cause of action for violations thereof, a plaintiff must prove six elements: "(1) a material misrepresentation or omission . . . ; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 37–38 (2011) (internal quotations and citations omitted).

In the motion to dismiss, defendants attack several of the elements and argue the Second Amended Complaint lacks factual allegations to support the requirements that (1) there was a "purchase" or "sale" of a security, (2) there is a connection between the alleged misrepresentations or omissions and the purchase or sale, (3) the fraudulent misstatements or omissions were pled with particularity, and (4) plaintiffs have sufficiently alleged scienter. The Court will address each argument in turn.

4

## A. "Purchase" or "Sale" of a Security

Defendants argue that that the Second Amended Complaint does not allege a "purchase" or "sale" of a security and therefore fails to state a claim [Doc. 20 p. 2]. "[I]t is well-accepted that in order to assert a claim for damages based on a violation of the federal securities laws, the plaintiff must be either a purchaser or seller of securities in connection with the securities claims." *Gaff v. Fed. Deposit Ins. Corp*., 814 F.2d 311, 318 (6th Cir. 1987). The Securities and Exchange Act defines "purchase" and "sale" as including a contract to buy, purchase, or otherwise acquire and a contract to sell or otherwise dispose of, respectively. 15 U.S.C. §§ 78c(a)(13), (14). To qualify, the contract must be enforceable. *Forte v. McQuiggan*, No. 08-15206, 2010 WL 3464316, at *10 (E.D. Mich. Aug. 30, 2010) (citing *Kagan v. Edison Bros. Stores, Inc.,* 907 F.2d 690, 691 (7th Cir. 1991) ("a contract for purposes of the securities laws means an *enforceable* contract") (emphasis original)).

Defendants state that "if the parties never entered into a binding agreement to purchase or sell securities, plaintiff has no 10b–5 claim regardless of any alleged fraud in the negotiation of such an agreement." *Chariot Grp., Inc. v. Am. Acquisition Partners, L.P.*, 751 F. Supp. 1144, 1149 (S.D.N.Y. 1990), *aff'd sub nom. Chariot Grp. v. Am. Acquisition LP*, 932 F.2d 956 (2d Cir. 1991). "It is not enough to prove breach of a commitment to negotiate in good faith until a contract to purchase securities was finally executed, because such a commitment could not by itself be deemed either a security or a contract to buy or sell a security." *Id*. "The language the parties use in their draft

5

agreements and in their contemporaneous communications is the most important indication of whether a signed writing is required before the parties are bound." *Chariot Grp.*, 751 F. Supp. at 1149. "[I]f the parties intend not to be bound until they have executed a formal document embodying their agreement, they will not be bound until then." *V'Soske v. Barwick*, 404 F.2d 495, 499 (2d Cir. 1968).

Defendants argue the language of three documents makes clear that the parties did not intend to be bound until a final definitive agreement had been executed. The Indication of Interest states

> *[t]he final and binding terms* for any Proposed Transaction between Volunteer and CNB shall be set forth in a mutually acceptable, final definitive agreement . . . to be negotiated between, and executed by, the parties, subject to the approval of our respective Boards of Directors. It is further understood that *this IOI is not intended to constitute a binding agreement* by and between CNB and Volunteer to enter into the definitive agreement referred to herein, and no liability or obligation of any nature whatsoever is intended to be created hereunder, except as expressly set forth in this IOI.

[Doc. 17-1 p. 3, emphasis added]. The Letter of Intent includes nearly identical language and further states that "[n]o contract or agreement providing for any transaction involving Civis Bank shall be deemed to exist between Volunteer and CNB and any of its affiliates unless and until a final Definitive Agreement has been executed and delivered by and between the parties" [Doc. 17-3 p. 3]. The "execution version" of the proposed Stock Purchase Agreement includes a section titled "No Contract until Execution" and states

> this Agreement *shall become valid and binding only after it is executed and delivered* by the Parties, and its enforceability shall be subject to the requisite approval of the Bankruptcy Court. Until execution hereof, *it is the intention of the parties that* (a) *no* agreement, *contract*, offer of agreement or proposal

6

*arises* and (b) no estoppel is created by the submission of any draft hereof or any other conduct of the Parties.

[Doc. 19-1 p. 61, emphasis added].[1]  The Second Amended Complaint alleges that defendants did not sign the Stock Purchase Agreement and that plaintiffs revoked their signature [Doc. 17 ¶¶ 28, 30].

Defendants argue courts have addressed similar situations and found that there was no contract for this purpose.  The Second Circuit addressed a similar set of circumstances in *Reprosystem, B.V. v. SCM Corp.*, 727 F.2d 257, 265 (2d Cir. 1984).  Drafts of the contract and other written communications established a mutual intent not to be bound prior to execution of the formal documents, since the contract stated "when executed and delivered, this [agreement] will be a valid and binding agreement."  *Reprosystem, B.V.*, 727 F.2d at 265.  The court held that there was no contract, and there was therefore no purchase or sale.  *Id*.  Citing *Reprosystem B.V.*, the Southern District of New York held similarly in stating "[a]bsent due execution of the Agreement, even if defendants were bound to a preliminary agreement to negotiate in good faith, there was no agreement to sell securities." *Chariot Grp.*, 751 F. Supp. At 1152.  This was true even if the parties had agreed to negotiate together in good faith to reach a final agreement.  *Id*.  The Northern District of Texas held that when a letter of intent was expressly made subject "to the final

---

[1]  "[W]hen a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment."  *Com. Money Ctr., Inc. v. Illinois Union Ins. Co*., 508 F.3d 327, 335–36 (6th Cir. 2007).  The complaint repeatedly refers to the stock purchase agreement between plaintiff and defendants [*See e.g.* Doc. 17 ¶ 26], and the Court may therefore consider Document 19-1 as filed by defendants.

7

legal documentation for the rights offering and other matters," that there was no contract, and therefore no sale. *Sw. Realty, Ltd. v. Daseke*, No. CIV. A.CA3-89-3055-D, 1990 WL 85921, at *6 (N.D. Tex. May 9, 1990).  The court there stated "[i]t is clear from the letter of intent that all parties contemplated the existence of future transactions before any final agreement could be consummated.  At most, the letter of intent reflected the parties' agreement to use their best efforts to complete the deal, and did not bind either party to the proposed rights offering."  *Id*.  Defendants therefore argue that based on the language in the various documents between the parties, the parties intended for a contract to be valid and binding only upon execution and delivery.

Plaintiffs respond that "[t]he SEC has consistently adopted a broad reading of 'in connection with the purchase or sale of any security'" and details the aborted purchaser-seller doctrine, namely that "if a person contracts to sell a security, that contract is a 'sale' even if the sale is never consummated."  *S.E.C. v. Zandford*, 535 U.S. 813, 813 (2002); *Falkowski v. Imation Corp.*, 309 F.3d 1123, 1129 (9th Cir. 2002), *amended on other grounds*, 320 F.3d 905 (9th Cir. 2003).  Defendants preempted this argument, stating in their initial brief that the aborted sale rationale only applies to *enforceable* contracts [Doc. 20 p. 12].  *Mount Clemens Indus., Inc. v. Bell*, 464 F.2d 339, 346 (9th Cir. 1972) ("The lack of a prior contractual relationship, therefore, is fatal to the contention of the appellants here that they should be afforded standing as 'purchasers' under the rationale of the 'aborted purchaser-seller' cases.").

8

Plaintiffs attempt to demonstrate there was a contract for a "purchase" or "sale" in two ways. First, plaintiffs rely heavily on *Chariot Grp.* which considered whether there was anything left to negotiate in determining whether the parties are bound prior to execution of the contract. 751 F. Supp. at 1150. Plaintiffs try to distinguish defendants' cases as saying there were ongoing negotiations and exchanges of drafts of the purchase/sale agreement or just a letter of intent, whereas here there were no other terms to be negotiated and "there was an agreed upon final Stock Purchase Agreement" [Doc. 22 p. 6]. However, the *Chariot Grp.* court's only discussion of the issue outlined how each party disputed the amount left to negotiate, and the court then said "[i]t is not for the court to determine retrospectively that at some point in the evolution of a formal document that the changes being discussed became so 'minor' or 'technical' that the contract was binding despite the parties' unwillingness to have it executed and delivered." *Id.* (citation omitted).

Defendants respond that this argument ignores the specific language of the documents [Doc. 23 p. 7]. The case plaintiffs rely upon even states that "[t]he language the parties use in their draft agreements and in their contemporaneous communications is the *most important indication* of whether a signed writing is required before the parties are bound." *Chariot Grp.*, 751 F. Supp. at 1149 (emphasis added). Defendants argue the Court is "*not* bound to accept . . . unwarranted inferences, including allegedly inferable 'facts' or conclusions which contradict documentary evidence appended to, or referenced within, the plaintiff's complaint." *Mulbarger v. Royal All. Assocs., Inc.*, 10 F. App'x 333, 335 (6th Cir. 2001).

9

The Court agrees. While progress in negotiation may be a factor in determining whether the parties are bound, here the language of the agreement is the most powerful and determinative consideration. Each document states the parties are not to be bound until execution of the agreements. Plaintiffs' attempt to distinguish defendants' cited cases as in a different stage of negotiation. However, each of those cases had express intention not to be bound until execution of the contract. Similarly, here, the Court will not disregard such explicit language in favor of a more subjective and speculative factor. The Court finds that the Stock Purchase Agreement and any prior negotiation or discussion did not create an enforceable contract that qualifies as a "sale" or "purchase."

Second, plaintiffs go even further to contend that the exclusivity provision of the Letter of Intent granted plaintiffs an option to purchase the securities [Doc. 22 p. 7]. The Letter of Intent states that neither Volunteer, Civis, or their representatives will "solicit or participate in negotiations or discussion with any person or entity with respect to the sale of the Shares or a sale of the material portion of the assets or business of Civis, whether directly or indirectly, through purchase, merger, consolidation, or otherwise" [Doc. 17-3 p. 6]. It further states that the defendants will notify plaintiffs of contact with others about a purchase or sale, and that if defendants violate the terms of the exclusivity provision, CNB has a right to a fee [*Id.*]. Plaintiffs contend this provision "essentially establishes an option for Plaintiffs to purchase the securities from Civis" [Doc. 22 p. 7]. Since "[t]he holders of puts, calls, options, and other contractual rights or duties to purchase or sell securities have been recognized as 'purchasers' or 'sellers' of securities for purposes of

10

Rule 10b-5," plaintiffs contend this relationship qualifies as a purchase or sale. *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 751 (1975).

Defendants respond that an option is more than agreement to agree but is itself an enforceable right to purchase or sell a security [Doc. 23 p. 5]. Black's Law Dictionary defines "option" as "[t]he right (but not the obligation) to buy or sell a given quantity of securities, commodities, or other assets at a fixed price within a specified time." *Option, Black's Law Dictionary* (11th ed. 2019). *See also Dow Jones & Co., Inc. v. Int'l Sec. Exch., Inc.,* 451 F.3d 295, 298 (2d Cir. 2006) (providing the same definition). Defendants argue nothing in the exclusivity provisions suggests that the Letter of Intent provided plaintiffs with an enforceable right to purchase Civis's stock. The remedy listed was not a forced stock sale, but the payment of a fee. The Letter of Intent even expressly noted that "no liability or obligation of any nature whatsoever is intended to be created hereunder, except as expressly set forth in Paragraph 11" which is the exclusivity provision. Defendants additionally state that the exclusivity provision had expired before the alleged breach or failure to sign, so even if it created an option, it had expired [Doc. 17 ¶ 23 ("The LOI Exclusivity Provision [was] extended through November 30, 2020"), ¶ 28 (stating that on December 18, 2020, plaintiffs learned defendants would not be entering into the Stock Purchase Agreement)].

The Court concludes that the Letter of Intent did not create an option. The language of the agreement is clear that the only remedy contemplated was liquidated damages. Furthermore, the language of the exclusivity provision itself does not suggest to the Court

that the provision was to create a right to purchase. The provision solely created a right to exclusive negotiation.

Considering both of plaintiffs' arguments, the Court finds that the Second Amended Complaint does not plausibly allege a "purchase" or "sale" of securities for purposes of Section 10(b) either through the Stock Purchase Agreement or the Letter of Intent. As defendants highlight, "[t]he federal securities laws do not confer upon the federal courts a roving commission to address every injury [company] may suffer in the course of attempting to negotiate and close a deal." *Northland Cap. Corp. v. Silver*, 735 F.2d 1421, 1431 (D.C. Cir. 1984). For these reasons, plaintiffs do not allege facts sufficient to fulfill the third element of the claim as to a "purchase" or "sale."

### B. Misrepresentations "in Connection with" the Purchase or Sale

Defendants argue that plaintiffs doubly fail to allege the third element of the claim, as the Second Amended Complaint does not allege any misrepresentation "in connection with" the purchase or sale [Doc. 20 p. 13]. Defendants argue that Section 10(b) does not prohibit "any alleged deception in a transaction involving the purchase or sale of a security" [*id.*] but its purpose is rather to "make sure that buyers of securities get what they think they are getting and that sellers of securities are not tricked into parting with something for a price known to the buyer to be inadequate or for a consideration known to the buyer not to be what it purports to be." *Chem. Bank v. Arthur Andersen & Co.*, 726 F.2d 930, 943 (2d Cir. 1984).

12

Defendants contend that for a misrepresentation to be "in connection with" the purchase or sale, the misrepresentation must be pertaining to the fundamental nature of security itself, meaning that it concerns its value, consideration received in return, or the "characteristics and attributes that induce an investor to buy or sell" that security. *Prod. Res. Grp., L.L.C. v. Stonebridge Partners Equity Fund, L.P.*, 6 F. Supp. 2d 236, 239 (S.D.N.Y. 1998). Defendants present other cases which have rejected Section 10(b) claims based on misrepresentations of intent to convey securities to plaintiffs. *Hunt v. Robinson*, 852 F.2d 786, 787 (4th Cir. 1988) (when "the gravamen of plaintiff's complaint is that the defendants fraudulently refused to convey or tender the stock to him, . . . [t]he alleged fraud lies, not in the actual sale of the stock" and the "causal connection between the alleged fraud and purchase or sale of stock . . . is lacking."); *Tully v. Mott Supermarkets, Inc*., 540 F.2d 187, 194 (3d Cir. 1976) ("The fraud which plaintiffs have alleged lies not in the actual sale of stock to them, but rather in the refusal to sell the remaining Class A shares"); *Kamberos v. Gallas*, No. 96 C 5125, 1997 WL 119952, at *3 (N.D. Ill. Mar. 14, 1997) (finding no connection when plaintiff "made no allegation that the defendants misrepresented the value of the Galmar stock promised to him or the value of his efforts as consideration for it. They simply breached the agreement to give the stock to him.").

Plaintiffs respond, citing a Ninth Circuit case that says the fraud "must have more than some tangential relation to the securities transaction" and that the term "in connection with" has been given a broad interpretation. *Falkowski v. Imation Corp*., 309 F.3d 1123, 1131 (9th Cir. 2002), *amended on other grounds*, 320 F.3d 905 (9th Cir. 2003) (citing

13

*Ambassador Hotel Co. v. Wei–Chuan Inv.*, 189 F.3d 1017, 1026 (9th Cir.1999)); *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 85 (2006). Plaintiffs rely on a Supreme Court case which stated "every securities case in which this Court has found a fraud to be 'in connection with' a purchase or sale of a security has involved victims who . . . tried to take . . . ownership interest in financial instruments that fall within the relevant statutory definition. *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 378 (2014). Plaintiffs state this implies that potential purchasers may fall under the "in connection with" requirement. Plaintiffs also cite *S.E.C. v. Zandford* where the Supreme Court stated the SEC has consistently maintained that "a broker who accepts payment for securities that he never intends to deliver" violates Section 10(b). 535 U.S. 813, 814 (2002).

Plaintiffs state they were fraudulently and intentionally misled to believe they were on the cusp of executing the finalized Stock Purchase Agreement and that "the only remaining step to Defendants executing and delivering the Stock Purchase Agreement was Defendants [sic] receipt of Plaintiffs' signature page thereto" [Doc. 22 p. 9]. Plaintiffs state this is directly related to the security transaction in that it is not a tangential relation, as prohibited by *Falkowski*, and involves a potential purchaser, as contemplated by *Troice*.

Defendants respond that plaintiffs' cited cases all involve misrepresentations about the value or investment characteristics of the stocks or a scheme involving misuse of the securities themselves. *Falkowski*, 309 F.3d at 1131 (claims concealing impending accounting write off and plan to force early exercise of the options were sufficient which both affect the security itself, not just the transaction); *Dabit*, 547 U.S. at 88–89 (involving

14

manipulation of stock prices); *Zandford*, 535 U.S. at 820 (respondent made sales of his customer's securities for his own benefit).[2] Defendants reiterate that a "claim fails where the plaintiff does not allege that [a defendant] misled him concerning the value of the securities he sold or the consideration he received in return." *Charles Schwab Corp. v. Bank of Am. Corp*., 883 F.3d 68, 96 (2d Cir. 2018) (citation omitted). More generally, defendants argue that "[w]hether or not Defendants violated their contractual obligations . . . is not a question suited for resolution under federal securities law." *Alfandary v. Nikko Asset Mgmt*., Co., No. 17-CV-5137 (LAP), 2019 WL 4747994, at *6 (S.D.N.Y. Sept. 30, 2019).

To the extent that *Falkowski* is broader than other presented caselaw, the weight of authority supports defendants' position. Plaintiffs have presented only one such case interpreting "in connection with" in this way, contrary to defendants' variety of cases from courts across the county. While *Troice* suggests potential purchasers may still have a connection with the securities transaction, the portion plaintiffs rely upon does not support a connection of misrepresentations to the securities, instead describing the relationship between the victim and the financial instrument. The Court therefore does not find plaintiffs' arguments to be persuasive.

---

[2] Defendants highlight plaintiffs' cited case *Troice*, which held there is no connection if the misrepresentation or omission is not material to a decision by one or more individuals in determining whether to buy or sell a security. 571 U.S. at 386–87. Plaintiffs here had not alleged material misrepresentation that would influence an investor's decision to purchase. The misrepresentation here was instead that defendants would sign a Stock Purchase Agreement. Additionally, defendants note that *Troice* and *Dabit* construe "in connection with" as it appears in the Securities Litigation Uniform Standards Act of 1998, not Section 10(b), but the language is similar.

15

Here, where "[d]efendants' statements to Plaintiffs that they would sell the securities to Plaintiffs were untrue, deceptive, fraudulent, manipulative and intentional" and "[d]efendants omitted the material fact that there was another purchaser involved and another LOI in the works with the other potential purchaser," these allegations do not relate to the value or investment characteristics of the securities [Doc. 17 ¶¶ 40–41]. The misrepresentations made here about intention to finalize the contract could apply to a negotiation of any other kind. That the subject matter of the deal here coincidentally happened to be securities should not bring this case within the scope of Section 10(b). The purpose of these is not to provide relief for all misrepresentations in the negotiation process, but rather to make sure buyers and sellers get what they expected or what something was purported to be. *Chem. Bank*, 726 F.2d at 943. The content of the misrepresentations here "relate[s] only to whether defendants were negotiating solely with plaintiff[s] and whether defendants intended to sell . . . to plaintiff[s]. Such misrepresentations did not pertain to the value of the stock." *Stonebridge Partners*, 6 F. Supp. 2d at 240. The relationship between the securities and the misrepresentations here is too tenuous to allege a connection. Therefore, plaintiffs again do not adequately allege the third element of the claim.

### C.    Particularity

Defendants argue that plaintiffs have failed to satisfy the particularity requirements of Rule 9(b) and the PSLRA. Rule 9(b) requires that plaintiffs "(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."

16

*Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (citation omitted). In short, at a minimum, plaintiffs must "specify the who, what, when, where, and how of the alleged fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (citation omitted).

The PSLRA "imposes more exacting pleading requirements than Federal Rules of Civil Procedure 8(a) and 9(b)." *Ricker v. Zoo Entm't, Inc.*, 534 F. App'x 495, 499 (6th Cir. 2013) (citations omitted). PSLRA's "exacting pleading requirements" obligate a plaintiff to "state with particularity both the facts constituting the alleged violation, and the facts evidencing scienter, *i.e.*, the defendant's intention 'to deceive, manipulate, or defraud.'" *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007) (citation omitted). To plead "the facts constituting the alleged violation," the complaint "must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Frank v. Dana Corp.*, 547 F.3d 564, 570 (6th Cir. 2008) (internal quotation marks and citation omitted). A complaint failing to comply with PSLRA's pleading requirements "shall" be dismissed. 15 U.S.C. § 78u-4(b)(3)(A).

Defendants argue that the Second Amended Complaint does not satisfy either Rule 9(b) or the PSLRA. The complaint states that defendants made "statements to Plaintiffs that they would sell the securities" which "were untrue, deceptive, fraudulent, manipulative, and intentional" [Doc. 17 ¶ 40], and defendants "omitted the material fact that there was another purchaser involved and another LOI in the works with the other

17

potential purchaser" [*Id*. ¶ 41]. However, the complaint does not identify a particular statement, who said the statement, or any further details. This Court has held that with regard to Rule 9(b), when allegations are "stated very generally" and "just go to the general nature of the fraud alleged" without stating "who made the misrepresentations, where they were made, when they were made, or the content" that "this is not enough." *Oddello Indus., LLC v. Sherwin-Williams Co.*, No. 2:14-CV-127, 2015 WL 13404558, at *5 (E.D. Tenn. Mar. 31, 2015). *See also City of Perry, Iowa v. Procter & Gamble Co.*, 188 F. Supp. 3d 276, 290 (S.D.N.Y. 2016) (holding a complaint failed to satisfy Rule 9(b) when it "identifies no specific statements, no specific speakers, and no specific consumers who heard or relied on those statements").

Defendants argue that particularity is required because to determine whether a statement is actionable under Section 10(b), the Court must "scrutinize the nature of the statement to determine whether the statement was false when made." *Sinay v. Lamson & Sessions Co.*, 948 F.2d 1037, 1040 (6th Cir. 1991). Such a task is difficult or impossible without more specific information about the statements. Defendants contend the Second Amended Complaint does not allege facts supporting an inference that defendants did not intend to honor the exclusivity provision when the documents were signed. *See Meide v. Pulse Evolution Corp.*, No. 3:18-CV-1037-J-34MCR, 2020 WL 5350325, at *16 (M.D. Fla. Sept. 4, 2020) (the complaint "includes no particularized allegations that, at the time any promises were made . . . the speaker secretly intended not to uphold the promise or

18

knew the promised outcome would not happen."); *IDT Corp. v. eGlobe Inc*., 140 F. Supp. 2d 30, 35 (D.D.C. 2001) ("What the complaint does not allege, however, is that the representations . . . were fraudulent at the time it was signed.").

Plaintiffs respond that the "threshold test is whether the complaint places the defendant on sufficient notice of the misrepresentation." *Carroll v. TDS Telecommunications Corp*., No. 1:17-CV-01127-STA-EGB, 2017 WL 6757566, at *7 (W.D. Tenn. Dec. 29, 2017) (citation omitted). Plaintiffs contend that the previously mentioned paragraphs of the complaint are not the "casual allegations of fraud" that Rule 9(b) was meant to prevent, *id.*, and state "[i]ndeed, it is difficult to imagine more detail at the outset of a case" [Doc. 22 p. 10]. The Court can, in fact, imagine quite a bit more detail. Plaintiffs may have specified which representatives of defendants made such statements and to whom, where they were made, a date they were made, what the statement specifically said, or allegations that may support the inference that the statements were untrue at the time they were made. And contrary to plaintiffs' assertion, requiring more particularity would not "go above and beyond the requirements set forth in Rule 9(b)" as described by the rulings in the case law set forth above [Doc. 22 p. 10]. When plaintiffs call claims false, misleading, deceptive, or something similar, "no matter how many times Plaintiffs use these labels, they are not facts, and certainly not facts sufficient for Rule 9(b)." *DiMuro v. Clinique Lab'ys, LLC*, 572 F. App'x 27, 30 (2d Cir. 2014). Accordingly, the Court concludes that the allegations in the complaint do not satisfy the particularity requirements to support a Section 10(b) claim.

19

### D.    Scienter

Defendants argue that plaintiffs fail to plead scienter. Plaintiffs are required to plead facts giving rise to a "strong inference" that defendants acted with scienter. 15 U.S.C. § 78u-4(b)(2). To satisfy this requirement, a complaint must create a "powerful or cogent" inference of scienter, and the Court must compare said inference with other possibilities and allow the complaint to "go forward only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 310 (2007).

Defendants contend the complaint does not identify whose state of mind could be attributed to them. Defendants are corporations, and scienter of a corporate defendant "is necessarily derived from its employees." *In re Marsh & Mclennan Companies, Inc. Sec. Litig.*, 501 F. Supp. 2d 452, 481 (S.D.N.Y. 2006). Plaintiffs must have pleaded facts that "create a strong inference that someone whose intent could be imputed to the corporation acted with the requisite scienter." *Barilli v. Sky Solar Holdings*, *Ltd.*, 389 F. Supp. 3d 232, 268 (S.D.N.Y. 2019). Defendants state that although the Sixth Circuit has identified persons whose states of mind are probative to assess corporate scienter in *In re Omnicare, Inc. Sec. Litig.*, 769 F.3d 455, 476 (6th Cir. 2014), the Court need not reach that analytical framework because the complaint "does not identify or even reference *any* individual agent

20

of either Defendant, much less allege facts supporting a 'powerful' inference that any of the relevant agents had scienter" [Doc. 20 p. 18]. This Court has held that when plaintiffs have not pleaded particular facts form which a strong inference of scienter can be drawn as to individuals, let alone impute it to defendants, the Court "need not broach this potentially complicated topic." *Stein v. U.S. Xpress Enterprises, Inc.*, No. 1:19-CV-98, 2020 WL 3584800, at \*33 n.28 (E.D. Tenn. June 30, 2020). Plaintiffs do not address this argument in the response. Defendants argue in the reply [Doc. 23] that proceeding to the next argument, that the allegations do not support an inference of fraudulent intent as compelling as an inference that defendants simply changed their minds,[3] is therefore unnecessary, having failed to pass the initial threshold. The Court agrees, and plaintiffs fail to adequately plead the scienter element of this claim.

---

[3] Defendants argue that the allegations do not allege any particular facts that support an inference of fraudulent intent as cogent and compelling as an inference that defendants simply changed their minds [Doc. 20 p. 19]. "It is well settled . . . that a defendant's present intent to defraud with respect to a promise of future behavior is not established merely by a failure of future performance." *Manela v. Garantia Banking Ltd.*, 5 F. Supp. 2d 165, 177 (S.D.N.Y. 1998). "To rule otherwise would be to conclude that the scienter element is satisfied whenever a change of mind closely follows a statement of intent." *Faulkner v. Verizon Commc'ns, Inc.*, 156 F. Supp. 2d 384, 396 (S.D.N.Y. 2001).

Plaintiffs respond that defendants focus on a small portion of the complaint, instead of looking at the allegations covering a two-year period of negotiations during which there was no revelation they were considering not moving forward with the deal [Doc. 22 p. 11]. Defendants reply that the exclusivity provision had expired by the time they entered into a letter of intent with another buyer [Doc. 23 p. 12]. Therefore, considering the complaint as a whole, defendants' argument tends to be more persuasive in that the inference that there was a two-year scheme to defraud is not as compelling as the inference that after the exclusivity provision expired, defendants were able to negotiate a better deal with another potential buyer [Doc. 23]. The inference of scienter must be more than "merely reasonable or permissible" but "cogent and compelling" in light of other explanations. *Tellabs, Inc.*, 551 U.S. at 324. The facts as alleged do not give rise to such a strong inference.

21

### E.    Supplemental Jurisdiction

While a district court has supplemental jurisdiction over state-law claims forming "part of the same case or controversy" as claims over which the court exercises original jurisdiction, 28 U.S.C. § 1367(a), a district court may decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction.  *Brooks v. Rothe*, 577 F.3d 701, 709 (6th Cir. 2009) (citing 28 U.S.C. § 1367(c)(3)).  Because the Court in this opinion will dismiss plaintiffs' claim arising under federal law, it will also **DISMISS without prejudice** plaintiffs' state law claims.

## IV.    Conclusion

For the reasons discussed above, Defendants' Motion to Dismiss the Second Amended Complaint [Doc. 18] will be **GRANTED**.  Because the complaint fails to adequately allege several of the prerequisites and elements of a violation of Section 10(b) and Rule 10b-5, plaintiffs claim must be dismissed under the Federal Rules of Civil Procedure and the PSLRA.  Accordingly, the federal securities claim will be **DISMISSED with prejudice**; the state law claims will be **DISMISSED without prejudice**.  There being no remaining claims before the Court, the Clerk of Court will be **DIRECTED** to **CLOSE** this case.

An appropriate order will enter.

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE

22